**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CEDAR HAVEN ACQUISITION, LLC,[1] | Case No. 19-11736 (JKS) |
| Debtor. | **Related Docket Nos. 749, 750, 760, 766, 864, 865** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE
FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11
PLAN OF REORGANIZATION OF CEDAR HAVEN ACQUISITION, LLC**

The above-captioned debtor and debtor in possession (the "**Debtor**") having filed (a) the

*Motion of Debtor for an Order (I) Approving the Adequacy of the Disclosures in the Combined*

*Disclosure Statement and Plan on an Interim Basis, (II) Scheduling the Confirmation Hearing and*

*Deadline for Filing Objections, (III) Establishing Procedures for the Solicitation and Tabulation*

*of Votes to Accept or Reject the Combined Disclosure Statement and Plan, (IV) Approving the*

*Form of Ballot and Solicitation Package, and (V) Approving the Notice Provisions* [Docket No.

750] (the "**Interim Approval and Procedures Motion**"); (b) the *Combined Disclosure Statement*

*and Chapter 11 Plan of Reorganization of Cedar Haven Acquisition, LLC* [Docket No. 749] and

the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of*

*Cedar Haven Acquisition, LLC* [Docket No. 760] (the disclosure statement portion thereof, the

"**Disclosure Statement**" and the chapter 11 plan portion thereof, the "**Plan**," each together with

all exhibits and supplements thereto and as may be modified and/or amended from time to time,

the "**Combined Plan and Disclosure Statement**");[2] (c) the *Plan Supplement for the First*

---

[1]   The Debtor in this case, along with the last four digits of the federal tax identification numbers, is Cedar Haven Acquisition, LLC (8400).  The mailing address for the Debtor is 590 South 5th Avenue, Lebanon, Pennsylvania 17042.

[2]   Capitalized terms not otherwise herein shall have the meanings ascribed to such terms in the Interim Approval and Procedures Motion or the Combined Plan and Disclosure Statement.

*Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of Cedar Haven Acquisition, LLC* [Docket No. 865] (the "**Plan Supplement**"); (d) the *Certification of Stretto Regarding Tabulation of Votes in Connection with the First Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of Cedar Haven Acquisition, LLC* [Docket No. 894] (the "**Tabulation Certification**"); (e) the *Declaration of Charles B. Blalack in Support of Confirmation of the First Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of Cedar Haven Acquisition, LLC* [Docket No. 895] (the "**Confirmation Declaration**"); and (f) the *Debtor's Memorandum of Law in Support of Entry of an Order Confirming the First Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization of Cedar Haven Acquisition, LLC* [Docket No. 896] (the "**Confirmation Memorandum**"); and the Court having entered the *Order (I) Conditionally Approving Combined Plan and Disclosure Statement for Solicitation Purposes Only, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Plan and Disclosure Statement, (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing Voting Record Date, (V) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and (VI) Approving Notice Procedures* [Docket No. 766] (the "**Interim Approval and Procedures Order**"), approving, among other things the Combined Plan and Disclosure Statement on an interim basis, the contents of the Solicitation Package, and the solicitation procedures and tabulation procedures; and the Court having entered the *Order Approving Amended Confirmation Notice* [Docket No. 864]; and the Court having conducted an evidentiary hearing to consider confirmation of the Combined Plan and Disclosure Statement on July 19, 2022 (the "**Combined Hearing**"); and any responses or objections to confirmation of the Combined Plan and Disclosure Statement raised at or prior to the Combined Hearing (collectively,

the "**Objections**") having been resolved, overruled, or withdrawn prior to or during the Combined

Hearing; and upon the record herein; and after due deliberation thereon; and good and sufficient

cause appearing therefor, the Court hereby finds and determines that:

## FINDING OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the

record of the Combined Hearing constitute the Court's findings of fact and conclusions of law

pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rules 7052 and 9014.  To the extent that any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding</u>.  The Court has jurisdiction over the Chapter

11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

from the United States District Court for the District of Delaware dated as of February 29, 2012.

Approval of the disclosures in and confirmation of the Combined Plan and Disclosure Statement

are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final

order with respect thereto.  The Debtor is an eligible debtor under section 109 of the Bankruptcy

Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is

the plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

C.      <u>Case Status</u>.  On August 2, 2019, the Debtor commenced a voluntary case under

chapter 11 of the Bankruptcy Code.  The Debtor has continued to operate its business and manage

its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No trustee or examiner has been requested or appointed in this case.  On August 20, 2019, the

Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Chapter 11 Case (the "**Committee**").

D.    <u>Judicial Notice</u>.  The Court takes judicial notice of the docket in the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

E.    <u>Adequate Information</u>.  The information contained in the Disclosure Statement contains extensive material information regarding the Debtor so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.  Additionally, the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.  Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

F.    <u>Interim Approval and Procedures Order Compliance</u>.  The Debtor has complied with the Interim Approval and Procedures Order, including the solicitation process, in all respects.

G.    <u>Burden of Proof</u>.  The Debtor has the burden of proving the elements of sections 1125 and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtor has met its burden and has proven each element of sections 1125 and 1129 of the Bankruptcy Code.

H.    <u>Voting</u>.  As evidenced by the Tabulation Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the

Bankruptcy Code and the Bankruptcy Rules, the solicitation process set forth in the Interim Approval and Procedures Order, and applicable non-bankruptcy law.

I.      Solicitation.  The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, and the Interim Approval and Procedures Order.  The Form of Ballots adequately addressed the particular needs of the Chapter 11 Case and is appropriate to the Holders of Claims in the Voting Classes, which are impaired under the Plan and may receive a distribution under the Plan, and whose votes were, therefore, solicited.

(1)      The period during which the Debtor solicited acceptances of the Plan was reasonable and sufficient under the circumstances of the Chapter 11 Case and enabled voting creditors to make an informed decision to accept or reject the Plan.

(2)      The Debtor was not required to solicit the votes from the Holders of Claims and Interests from the following Classes (the "**Deemed to Accept Classes**") as each such Class is unimpaired under the Plan and conclusively presumed to have accepted it: Class 1 (DIP Facility Claims), Class 2 (Other Secured Claims), Class 3 (Priority Claims), and Class 6 (Equity Interests).

(3)      As described in the Tabulation Certification and the Confirmation Declaration, the transmittal and service of the Solicitation Packages was timely, adequate, and sufficient under the circumstances.  The solicitation of votes on the Plan complied with the Interim Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable rules, laws, and regulations.  In connection therewith, the Debtor, and its employees, attorneys, advisors and professionals in the Chapter 11 Case are entitled to the protection of section 1125(e) of the Bankruptcy Code.

J.      Plan Supplement.   In accordance with the Combined Plan and Disclosure Statement, on June 13, 2022, the Debtor filed the Plan Supplement [Docket No. 865].  The information and documents comprising the Plan Supplement and the amendments or supplements thereto are integral to, part of, and incorporated by reference into the Combined Plan and

Disclosure Statement.   Under the circumstances, the filing and service of such documents constitutes due, adequate and sufficient notice of the Combined Plan and Disclosure Statement, and the Combined Hearing to all parties entitled to such notice under the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is necessary or required.  The Exit Financing to be effectuated pursuant to the Exit Facility agreement, substantially in the form annexed as Exhibit D to the Plan Supplement shall, when closed, be a true secured loan transaction and not a contribution to or purchase of equity interests in the Debtor by Fremont Lake LLC, or any of its members or managers.  Consistent with the terms of the Plan, the Debtor reserves the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.  To the extent that any such alterations, amendments, updates, or modifications affect or apply to any agreement, contract, or instrument, or any provision of the Plan, over which the Landlord has the right of approval or consent under the Plan, then the Landlord shall have the same right or approval or consent over such alterations, amendments, updates, or modifications as are provided in the Plan.  The Plan is hereby deemed amended to delete Article XI.B(5) and the footnote thereto.

K.     Bankruptcy Rule 3016.   The Plan is dated and identifies its proponents in accordance with Bankruptcy Rule 3016(a).  The Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction in accordance with Bankruptcy Rule 3016(c).

L.     Good Faith.  The Plan was negotiated in good faith and at arm's length, and the Debtor has not engaged in any collusive or unfair conduct in connection with the Plan.

M.     Notice.  As evidenced by the Tabulation Certification and the Confirmation Declaration, the transmittal and service of the Solicitation Packages were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing

(including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Interim Approval and Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

N.      Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with all applicable provisions of the Bankruptcy Code, including but not limited to the following:

1.      The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  In addition to Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified, the Plan classifies Claims and Equity Interests into six separate Classes.  The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for the separate Classes of Claims and Equity Interests established under the Plan.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Article V of the Plan specifies that Classes 1, 2, 3, and 6 are not impaired under the Plan.  Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.      Article V of the Plan designates Classes 4 and 5 as impaired and specifies the treatment of Claims in such Classes.  Thus, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

4.      Article V of the Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class.  Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.      The Plan provides adequate and proper means for its implementation, including without limitation, (i) the vesting of assets in the Reorganized Debtor; (ii) the Debtor's continued corporate existence as the Reorganized Debtor and emergence from Chapter 11; (iii) the Reorganized Debtor's management composition; and (iv) establishment of the GUC Pool.  Thus, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

6.      Article VII of the Plan sets forth the identity, compensation and powers of the GUC Administrator.  Article IX.B. of the Plan sets forth the manner of governance of the Reorganized Debtor.  The Debtor has adequately disclosed the identity and affiliations of persons to serve on the initial board of directors or managing member or to be an officer

of the Reorganized Debtor in the Plan Supplement.  The manner of selection of such individuals is consistent with the interests of Holders of Claims and Equity Interests and with public policy.  Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

7.     The Plan's additional provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, provisions for: (i) the impairment of certain classes of claims; (ii) the releases by the Debtor of certain parties; (iii) the exculpations of certain parties; (iv) the injunctions against certain parties; (v) the permissible modifications of the rights of Holders of Claims or Equity Interests; (vi) the distributions to Holders of Allowed Claims; (vii) the exemption of the securities issued under the Plan from transfer taxes; and (viii) the retention of jurisdiction by the Court over certain matters after the Effective Date.

O.     The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtor has complied with all the applicable provisions of the Bankruptcy Code, including without limitation sections 1122, 1123, 1124, 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Interim Approval and Procedures Order, and other orders of the Court, satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

P.     Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.  In making this determination, the Court has considered the circumstances and record of this case and the process leading to the filing of the Combined Plan and Disclosure Statement and the Combined Hearing.  The Plan is the result of extensive arm's length and good faith negotiations among the Debtor, the Committee, the Landlord and Stone Barn, and has received strong support from creditors.  The Plan is proposed to effect a successful reorganization of the Debtor and to maximize creditor recoveries, and accordingly is consistent with the objectives and purposes of the Bankruptcy Code.

Q.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtor, or by any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter

11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.

R.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.    The identity and affiliations of the individuals that will serve as directors and officers, or managing member, of the Reorganized Debtor have been disclosed in the Plan Supplement, in satisfaction of section 1129(a)(5)(A)(i) of the Bankruptcy Code.  Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the directors and officers, or managing member, to such offices is consistent with the interests of creditors and with public policy inasmuch as no objection to their appointment was received.  Moreover, the identity and affiliation of the GUC Administrator was disclosed in the Plan Supplement, which also identified the GUC Administrator's proposed compensation, in satisfaction of section 1129(a)(5)(A)(i) of the Bankruptcy Code.  Further, in accordance with section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the appointment of the GUC Administrator is consistent with the interests of creditors and with public policy inasmuch as no objection to the proposed GUC Administrator was received.

S.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.    After confirmation of the Plan, the Debtor's business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable.

T.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis attached to the Combined Plan and Disclosure Statement, and other evidence proffered or adduced at the Combined Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that

each Holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or

retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the

Effective Date, that is not less than the amount that such Holder would receive or retain if the

Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

U.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Holders of Claims in

Classes 1 (DIP Facility Claims), 2 (Other Secured Claims), 3 (Priority Claims), and Class 6 (Equity

Interests), are unimpaired and deemed to accept the Plan.  Holders of Claims in Classes 4 (Landlord

Claim) and 5 (General Unsecured Claims), are impaired and entitled to vote.  Holders of Claims

in Class 4 (Landlord Claim) and Class 5 (General Unsecured Claims) have voted as a class to

accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  Therefore, the Plan

satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.  Further, as set forth

below, the Plan is confirmable because it satisfies the nonconsensual confirmation requirements

of section 1129(b) of the Bankruptcy Code.

V.      <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. §</u>

<u>1129(a)(9))</u>.  The Debtor has represented to the Landlord and to the Court that the condition

precedent to the Effective Date described in Article XI.B(4) of the Plan includes the payment of

all Nursing Facility Assessments, or "bed taxes", that are due and payable to the Commonwealth

of Pennsylvania.  The treatment of Allowed Administrative Expenses under the Plan satisfies

section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Allowed Priority Tax Claims

under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

W.      <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>.  At least one Class of

Claims that is impaired under the Plan has accepted the Plan, determined without including any

acceptance of the Plan by an insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

        X.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  Confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtor, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

        Y.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Plan provides that all fees payable pursuant to 28 U.S.C. § 1930 and/or 31 U.S.C. § 3717, as determined by the Court, shall be paid for each quarter (including any fraction thereof) by the Debtor, the until the earlier of the time that the Chapter 11 Case is converted, dismissed, or closed.

        Z.      <u>Inapplicable Provisions (11 U.S.C. § 1129(a)(13)-(16))</u>.  The Debtor (i) does not owe retiree benefits (as defined under section 1114 of the Bankruptcy Code), (ii) does not have domestic support obligations, (iii) is not an individual, and (iv) is a moneyed, business, or commercial entity; accordingly, sections 1129(a)(13)-(16) of the Bankruptcy Code are not applicable to this case.

        AA.      <u>Fair and Equitable, No Unfair Discrimination (11 U.S.C. § 1129(b))</u>.  Based upon the evidence proffered, adduced, and presented by the Debtor at the Combined Hearing, the Plan does not discriminate unfairly against, and is fair and equitable with respect to the Voting Classes as required by section 1129(b)(1) and (b)(2) of the Bankruptcy Code.  The Plan's classification scheme, including its treatment of the Voting Classes, is appropriate as similarly situated Claims receive substantially similar treatment under the Plan and valid business, factual, and legal reasons exist for the separate classification and treatment of the Claims or Equity Interests across the various Classes established under the Plan.  In addition, other than the Class 6 (Equity Interests), there is no Holder of any Claim or Equity Interest that is junior to the Holders of the General

Unsecured Claims that will receive or retain any property under the Plan on account of such junior Claim or Equity Interest, and no Class is receiving or retaining property under the Plan with a value greater than the Allowed amount of Claims in such Class.  To the extent Class 6 (Equity Interests) are reinstated, such treatment is provided in exchange for significant new value provided by Mr. Blalack and Stone Barn under the Plan.  Therefore, the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Voting Classes.

BB.    Only One Plan (11 U.S.C. § 1129(c).  The Plan is the only plan filed in the Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

CC.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court, the Debtor and its employees, attorneys, advisors and professionals in the Chapter 11 Case have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and, therefore, are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and,

to the extent such parties are listed therein, the exculpation provisions found in Article XII.B. of the Plan.

EE.    <u>Implementation</u>.  All documents necessary to implement the Plan, and all other relevant and necessary documents have been developed and negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

FF.    <u>Releases, Exculpation, Discharge and Injunction</u>.  The Court has jurisdiction under sections 1334(a) and (b) of the United States Code to approve the releases, exculpation, discharge, and injunction provisions of Article XII of the Plan.  Each of the releases, exculpation, discharge and injunction set forth in Article XII of the Plan are fair and necessary to the consummation of the Plan.  Such releases, exculpation, discharge, and injunction constitute good faith compromises and settlements of the matters covered thereby and are given in exchange for and are supported by fair sufficient, and adequate consideration provided by each and all of the parties receiving the benefit of such releases, exculpation, discharge, and injunction. The Court's findings of fact to support the approval of the Plan's releases, exculpation, discharge, and injunction are as follows:

1.    <u>Compromise and Settlement</u>. The Plan memorializes the significant compromises and agreements by and among the Released Parties that were agreed upon among the Released Parties, the Committee and the Debtor and as reflected in the Plan.  The Released Parties' commitments under Plan are contingent upon the corresponding commitments by the other Released Parties and the Releasing Parties.  In consideration for the classification, distributions, and other benefits provided under the Plan (including the releases and injunctions), the provisions of the Plan constitute a good faith compromise and settlement of all Causes of Action and controversies among the Released Parties and the Releasing Parties to the extent and subject to the terms set forth in the Plan, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other

theory of law, relating to or in connection with the business or affairs of or transactions with the Debtor or as otherwise set forth in the Plan. These compromises and settlements are (i) in the best interests of the Debtor, its Estate and creditors, and other parties in interest; (ii) fair, equitable, proposed in good faith and reasonable; and (iii) an essential element of the resolution of this Chapter 11 Case in accordance with the Plan.    Each of the release and indemnification provisions set forth in the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 157(a), 157(b)(2), and 1334(a); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the compromises and settlements identified in the Plan; (iv) confers material benefit on, and is in the best interest of, the Debtor, its Estate and its creditors; (v) is important to the overall objectives of the Plan to finally resolve all Causes of Action among or against the Released Parties and the Releasing Parties; and (vi) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

2.    <u>Fairness</u>. The Released Parties have provided, or have agreed to provide, a substantial contribution that is essential to make the Plan feasible and provide a fair result for and consideration to the Debtor's creditors.  Additionally, as reflected in the Tabulation Certification, Holders of the Voting Classes voted overwhelmingly in support of the Plan, thus confirming its reasonableness and the support of the Class of creditors primarily affected by the releases.

3.    <u>Necessity to the Reorganization</u>. The releases, exculpation, discharge, and injunction provisions of Article XII of the Plan are critical to the success of the Plan.  Without the releases, and the enforcement of such releases through the Plan's injunction provisions, the Released Parties were not willing to make their contributions under the Plan. Absent those contributions, no reorganizing chapter 11 plan would have been feasible.

4.    <u>Record Supports Specific Findings</u>. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the releases, exculpation, discharge, and injunction provisions of Article XII of the Plan.

5.    <u>Extraordinary Circumstances</u>. The Plan avoids the need for contentious and value-destroying litigation and preserves the Debtor's assets and maximizes the value available to its Creditors.  The extensive efforts and substantial contributions by each of the Released Parties, along with the magnitude of the recoveries provided under the Plan to Holders of Allowed Claims constitute extraordinary circumstances warranting the releases, exculpation, discharge, and injunction provisions of Article XII of the Plan.

6.    <u>Significant Contributions</u>. Each of the Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Case, including, as applicable, actively supporting the Plan and the Chapter 11 Case and waiving substantial rights and Claims against the Debtor under the Plan.

7.    <u>Identity of Interest</u>. There is a substantial identity of interest between the Debtor and the Released Parties and their respective Related Parties, including, specifically:

    i.    Each of the Debtor, the Reorganized Debtor, the Committee and its members, the DIP Lender, the Landlord, Charles B. Blalack, Stone Barn and Stone Barn Management, share the "common goal" of confirming and implementing the Plan.  Absent the involvement of the Released Parties, none of the settlements required for, or entered into in connection with, the confirmation of the Plan would be possible, and few business assets would be available for distribution to creditors; and

    ii.    Many of the Released Parties, including the DIP Lender and its Related Parties, and the Debtor's Related Parties, allege that they may have direct or indirect indemnification rights against the Debtor, such that a Cause of Action asserted against a Released Party or its Related Parties is essentially a Claim against the Debtor to the extent the Released Party or Related Party (as applicable) has indemnification rights against the Debtors. Claims successfully asserted by any of the Debtor's Related Parties under any of the foregoing bases would deplete the assets of the Debtor's Estate.

GG.    Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusion of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Notice of Combined Hearing</u>.  Notice of the Combined Hearing complied with the terms of the Interim Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

3.     <u>Adequate Information</u>.  The disclosures contained in the Disclosure Statement are approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, and any objections to the adequacy of the information contained in the Disclosure Statement not otherwise consensually resolved are overruled in their entirety.

4.     <u>Solicitation</u>.   The solicitation of votes on the Plan complied with the Interim Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.

5.     <u>Ballots</u>.  The form of Ballots attached as <u>Exhibit 1</u> to the Interim Approval and Procedures Order are in compliance with Bankruptcy Rule 3018(c), and substantially conforms to Official Form Number 14, and is approved in all respects.

6.     <u>Confirmation</u>.  The Plan, in the form attached hereto as <u>Exhibit A</u>, and all exhibits thereto, including all documents of the Plan Supplement, are approved in all respects.  The terms of the Plan are an integral part of this Confirmation Order.

7.     <u>Objections Resolved or Overruled</u>.   All objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Combined Hearing, shall be, and hereby are, overruled in their entirety.

8.     <u>Amendments, Modifications or Alterations</u>.   To the extent the Plan has been amended, modified or supplemented subsequent to solicitation, including as modified herein, then to the extent that such revisions do not materially and adversely affect the treatment of any Claims or Equity Interests pursuant to the Plan and otherwise are consistent with Section V. of the Plan, pursuant to Bankruptcy Rule 3019, such revisions, if any, do not require additional disclosure

under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9.    <u>Compromise of Controversies</u>.  For the reasons stated herein, the Plan constitutes a good faith, arm's-length compromise and settlement of all Claims or controversies related to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any Distribution to be made or obligation to be incurred pursuant to the Plan, and the entry of this Confirmation Order constitutes approval of all such compromises and settlements.

10.    <u>Binding Effect</u>.  On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall be binding on the Debtor, the Estate, all Holders of Claims and Equity Interests (irrespective of whether such Claims or Equity Interests are impaired under the Plan or whether the Holders of such Claims or Equity Interests have accepted the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor, any other parties in interest in the Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11.    <u>Vesting of Assets</u>.  On the Effective Date, except as otherwise explicitly provided for in the Plan, all of the property and assets of the Debtor shall vest on the Effective Date in the Reorganized Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights, Equity Interests, and interests.

12.    <u>Implementation</u>.  The Debtor, the Reorganized Debtor, and the GUC Administrator are hereby authorized to take all actions as necessary, appropriate, or desirable to enter into, implement, and consummate the transactions contemplated by the Plan and the contracts,

instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan and its related documents.  Pursuant to this Confirmation Order, the Debtor is hereby authorized and empowered, without action by its stockholders or further action by its managing member or board of directors, to take any and all actions as are consistent with the Plan and as are reasonably determined by any of its executive officers to be necessary or appropriate to implement, effectuate or consummate any and all instruments, documents or transactions contemplated by the Plan or this Confirmation Order.  Execution versions of the Plan and its related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

13.    <u>GUC Administrator</u>.    Brian Ryniker is hereby approved as the initial GUC Administrator in accordance with this Confirmation Order, the Plan, and the Plan Supplement. The GUC Administrator shall be compensated in accordance with the terms of the Plan and Plan Supplement.  The GUC Administrator shall not be required to post a bond or other security in connection with its obligations under the Plan or Plan Supplement.

14.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to taxation under any law imposing a stamp tax or similar tax, recording tax or filing fee, in each instance to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code and whether such action is taken by the Debtor, Reorganized Debtor, GUC Administrator, or any other Person: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the

Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Debtor's assets or property in the Reorganized Debtor, pursuant to or in connection with the Plan, including, without limitation, merger agreements, stock purchase agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  The Court shall retain specific jurisdiction with respect to these matters.

15. _Revesting of Equity_.  On the Effective Date, Stone Barn shall continue to own ninety-five percent (95%) and Michael D. D'Arcangelo shall continue to own five percent (5%) of the membership interests of the Reorganized Debtor.

16. _Further Approvals_.  Any action under the Plan or this Confirmation Order to be taken by, or required of, the Debtor or the Reorganized Debtor, including without limitation, the adoption or amendment of the new corporate governance documents, the issuance of securities and instruments, or the selection of officers or directors, shall be authorized and approved in all respects, without the requirement of further action by any of the Debtor's or Reorganized Debtor's managing member, board of directors or shareholders.

17. _Directive in Furtherance of Plan_.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, filings and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

18.     <u>Binding Exculpation Provision</u>.  All exculpation provisions contained herein and/or in the Plan, including, but not limited to those contained in Article XII.B. of the Plan, are approved and are effective and binding on all persons and entities, to the extent provided therein. Notwithstanding anything herein or the Plan to the contrary, the exculpation provisions contained herein and/or in the Plan, including, but not limited to those contained in Article XII.B. of the Plan shall be limited to the period of time starting on the Petition Date and ending on the Effective Date.

19.     <u>Binding Release Provisions</u>.  All release provisions contained herein and/or in the Plan, including, but not limited to those contained in Article XII.C. of the Plan, are approved and are effective and binding on all persons and entities, to the extent provided therein.

20.     <u>Discharge and Injunction</u>.  Section XII.A of the Plan is hereby approved in its entirety, incorporated into this Confirmation Order as if set forth in full herein, and, subject to the occurrence of the Effective Date, is immediately effective and binding in accordance with its terms. Without limiting the foregoing, effective as of the Effective Date, all existing Claims against the Debtor shall be, and shall be deemed to be, discharged and terminated, and all Liens against or security interests in any Estate property shall be, and shall be deemed to be, released and discharged.   The Debtor, Reorganized Debtor or an authorized representative thereof are authorized to and may issue, execute, deliver, file or record a power of attorney or any other instrument as may be necessary or appropriate to effectuate and implement the release of such Liens and/or security interests.  Except as otherwise provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Plan on account of any such Claims or

Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other

proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award,

decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a

setoff right, subrogation, or recoupment of any kind against any debt, liability, or obligation due

to the Debtor; and (e) commencing or continuing, in any manner or in any place, any action that

does not comply with or is inconsistent with the provisions of this Plan; *provided, however*, that

such entities shall not be precluded from exercising their rights pursuant to and consistent with the

terms of the Plan or the Confirmation Order; *provided, further*, that the foregoing shall not apply

to any acts, omissions, claims, causes of action or other obligations expressly set forth in and

preserved by the Plan or any defenses thereto.

21.    <u>Existing Injunctions of Stays</u>.  All injunctions or stays in effect during the Chapter

11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on

the Combined Hearing shall remain in full force and effect until the Effective Date, *provided,*

*however*, that no such injunction or stay shall preclude enforcement of any Person's rights under

the Plan and the related documents.  Any action taken following the Petition Date in violation of

section 362 of the Bankruptcy Code shall be void *ab initio* without any further action on the part

of the Debtor, the Reorganized Debtor or further order of this Court.

22.    <u>No Successor Liability</u>.  Except as may be provided in the Plan, the transfer of

property of the Debtor to the Reorganized Debtor shall be free and clear of any claims, liens,

charges, encumbrances, rights or other interests or resulting liabilities, to the extent that the

Reorganized Debtor is to any extent a successor to the Debtor under any state or federal statutory

or common law relating to successor liability, or any claim that an entity is legally responsible for

the debts or liabilities of another entity as a successor to, continuation of, or participate in a *de*

*facto* or actual merger with, the other entity, under any theory or legal doctrine of any type or nature whatsoever.  To the extent permitted pursuant to applicable law, the Reorganized Debtor shall not be, nor shall it be deemed to be, a successor to the Debtor for any purpose.

23.     <u>Insurance</u>.  Except as explicitly set forth in the Plan, nothing in the Plan or this Confirmation Order alters the rights and obligations of the Debtor and the Debtor's insurers (and third-party claims administrators) under applicable insurance policies (and the agreements related thereto) or modifies the coverage provided thereunder of the terms and conditions thereof.  Any such rights and obligations shall be determined under the applicable insurance policies, any related agreement of the parties and applicable law.

24.     <u>Assumption of Certain Executory Contracts</u>.  The Reorganized Debtor is authorized to assume each Executory Contract identified in the Plan Supplement on the Effective Date pursuant to section 365(a) of the Bankruptcy Code.  The "cure amount" and any assurance of future performance by the Reorganized Debtor listed in the Plan Supplement with respect to each such Executory Contract are hereby approved and deemed adequate.

25.     <u>Assumption of Amended Lease</u>.  The Reorganized Debtor is authorized to assume the Amended Lease contained in the Plan Supplement pursuant to section 365(a) of the Bankruptcy Code.

26.     <u>Rejection of Executory Contracts</u>.  Except as set forth in the Plan and Plan Supplement, as of the Effective Date, each Executory Contract and Unexpired Lease to which the Debtor is a party is hereby rejected as of the Effective Date unless (i) previously assumed and/or assigned, (ii) subject to a pending motion to assume and/or assign, or (iii) rejected before the Effective Date.

27.   <u>Rejection Bar Date</u>.  All claims arising out of the rejection of an Executory Contract pursuant to Article X of the Plan must be filed with the Court on or before 30 days after the Effective Date (the "**Rejection Bar Date**").  Any such Claims not timely filed shall be forever barred.

28.   <u>Administrative Expense Bar Date</u>.  Unless previously filed or as otherwise governed by another order of the Court, requests for payment of Administrative Expense Claims must be included within an application (setting forth the amount of, and basis for, such Administrative Expense Claims, together with documentary evidence) filed with the Court and served on counsel to the Debtor, the Reorganized Debtor, and the GUC Administrator by the Administrative Expense Bar Date, which shall be the first Business Day that is 30 days after the Effective Date.  Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Bar Date shall be forever barred from asserting such Administrative Expense Claims against the Debtor, the Estate, the Reorganized Debtor, or their respective property.

29.   <u>Professional Compensation</u>.  Except as provided in the Plan, all Professionals shall file with the Court applications for compensation within thirty (30) days after the Effective Date.  Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, order, or approval of, the Court.  Professional Fee Claims shall be paid after the Effective Date by the Reorganized Debtor in accordance with Article IV.L of the Plan.

30.     <u>Conditions to Effectiveness</u>.   The Plan shall not become effective unless the conditions set forth in Article XI of the Plan have been satisfied or waived.

31.     <u>Preservation of Causes of Action</u>.  Pursuant to the Plan, the Estate Causes of Action and Avoidance Actions shall be and are hereby preserved, except as provided otherwise in the Plan or any Final Order of this Court.

32.     <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall have no force or effect until the Effective Date.  None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor or any Holder of Claims or Equity Interests before the Effective Date.

33.     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930 and/or 31 U.S.C. § 3717, as determined by the Court, shall be paid for each quarter (including any fraction thereof) by the Debtor, the until the earlier of the time that the Chapter 11 Case is converted, dismissed, or closed.

34.     <u>Retention of Jurisdiction</u>.  On and after the Effective Date, the Court shall retain jurisdiction, to the fullest extent possible under law, over all matters arising in, arising under, and related to the Chapter 11 Case, the Plan, and the Plan Supplement for, among other things:

> a.      to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

> b.      to enter and implement such orders as may be appropriate in the event this Confirmation Order is for any reason stayed, revoked, modified, or vacated;

> c.      to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

d.      to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, this Confirmation Order;

e.      to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code;

f.      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

g.      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

h.      to hear any other matter not inconsistent with the Bankruptcy Code;

i.      to enter the Final Decree;

j.      to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

k.      to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

l.      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

m.      to determine any other matters that may arise in connection with or related to the Plan, this Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Plan;

n.      to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case;

o.      to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

p.      to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is discharged hereunder, or for any other purpose.

35.     <u>Severability of Plan Provisions</u>.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision of the Plan or this Confirmation Order, including the findings of fact and conclusions of law set forth herein, be determined to be unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

36.     <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles or conflicts of law thereof.

37.     <u>Applicable Non-bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents (or any amendments or modifications thereto) shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

38.     <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

39.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any

documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

40.     <u>Notice of Entry of Confirmation Order and Effective Date</u>.  The form of notice of Effective Date and entry of this Confirmation Order, attached hereto as <u>Exhibit B</u> (the "**Effective Date Notice**"), provides adequate and reasonable notice and is hereby approved.  On or within two (2) Business Days of the Effective Date, the Debtor shall file and serve the Effective Date Notice on the following parties: (i) all parties filing a notice of appearance and request for service pursuant to Bankruptcy Rule 2002 in the Chapter 11 Case; (ii) state and local taxing authorities in which the Debtor did business; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the United States Attorney for the District of Delaware; (vi) Holders of Claims or Equity Interests; (vii) all counterparties to executory contracts and unexpired leases with the Debtor; (viii) the U.S. Trustee; (ix) the Committee; (x) the GUC Administrator; and (xi) all persons or entities listed on the Debtor's creditor mailing matrix.

41.     <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

42.     <u>Construction; Interpretation</u>. The failure to specifically describe or include any particular provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan (including any exhibits thereto and the Plan Supplement) be approved and confirmed in its entirety. In the event of any conflict between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern (unless

otherwise expressly provided for in such agreement, instrument, or document).  In the event of any conflict between this Confirmation Order and the Plan or any other agreement, instrument, or document intended to implement the provisions of the Plan, the terms of this Confirmation Order shall govern.

43.    <u>Final Order</u>.  Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall be effective and enforceable immediately upon entry.  This Confirmation Order is a final order, and the period in which an appeal must be filed shall commenced immediately upon the entry hereof.

44.    <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

45.    <u>DIP Facility Claims</u>. Notwithstanding anything to the contrary herein or in the Plan and Disclosure Statement, (I) the terms of the Final DIP Order and the DIP Liens shall survive confirmation of the Plan and continue until the DIP Facility Claims are paid in full in Cash, (ii) the DIP Facility Claims against the Debtor and Stone Barn shall survive confirmation of the Plan and continue until the DIP Facility Claims are paid in full in Cash;  (iii) the Termination Date of the DIP Facility is July 31, 2022, unless otherwise extended by the DIP Lender in its sole discretion under the terms of the Final DIP Order, and (iv) all rights and remedies of the DIP Lender under the Final DIP Order are expressly reserved.

46.    <u>Capital Funding</u>.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, the Exit Financing, the Confirmation Order, and any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or

supervening, grants an injunction or release): (i) the Capital Funding Liens and the claims of

Capital Funding secured by such liens are unimpaired by the Plan, as contemplated by Section

1124 of the Bankruptcy Code; (ii) on and after the Effective Date, the FHA-Insured Loan

Documents (as defined in the Intercreditor Agreement) shall survive and shall not be amended,

modified, waived, released, discharged or impaired in any respect as a result of confirmation of

the Plan and occurrence of the Effective Date and the Reorganized Debtor shall continue to be

bound by the FHA-Insured Loan Documents in accordance with their terms as if the bankruptcy

case had not occurred; and (ii) to the extent the Debtor secures the Exit Financing as contemplated

in the Plan or any other post-confirmation financing, a condition precedent to the Effective Date

shall be approval of such financing by HUD and Capital Funding.

47.    <u>Exit Financing</u>.  The Debtor is authorized to enter into the Exit Financing agreement

substantially in the form annexed to the Plan Supplement as Exhibit D.

48.    <u>HHS</u>.  Notwithstanding any provision to the contrary in the Plan, the Plan

Supplement, this Order or any document related to the foregoing (collectively, "**Documents**"):

    a.    As to the United States, nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a claim, (b) any claim of the United States arising after the Effective Date, or (c) any liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Effective Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) authorize the assumption, sale, assignment or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, including but not limited to, any Medicare Agreement, or other interests of the federal government (collectively, "**Federal Interests**") without compliance by the Debtor and any transferee with all terms of the Federal Interests and with all applicable non-bankruptcy law; (4) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the assumption, transfer or assignment  of any Federal Interests; (5) authorize

the assumption, transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (6) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, liability, suit, right or Cause of Action of the United States; (7) affect any setoff or recoupment rights of the United States and such rights are preserved; (8) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the Bankruptcy Code; (9) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (10) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States.

b.    Liens securing claims of the United States shall be retained until the claim, with interest, is paid in full. Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full. Priority Tax Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent allowed Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code. Moreover, nothing shall affect a release, injunction or otherwise preclude any claim whatsoever against the Debtor or the Debtor's Estate by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against the Debtor or the Debtor's estate with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code.

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

Dated: July 28th, 2022
Wilmington, Delaware